UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAULLIO LOURENCO ZAN, | ) |
| Petitioner, | ) |
| v. | ) Civil No. 25-13440-LTS |
| DAVID WESLING et al., | ) |
| Respondents. | ) |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

December 4, 2025

SOROKIN, J.

Braullio Lourenco Zan, a citizen of Brazil who is in immigration detention, seeks a writ of habeas corpus under 28 U.S.C. § 2241. His petition is ALLOWED as described below.

In July 2022, Lourenco Zan entered the United States without inspection and was promptly arrested and detained by Customs and Border Protection ("CBP") officers. Doc. No. 1 ¶¶ 1, 16. Initially, CBP invoked the expedited removal process established in 8 U.S.C. § 1225(b)(1), which applies when immigration offers inspect "aliens arriving in the United States." Pursuant to that process, on July 22, 2022, CBP completed the first portion of a form entitled "Notice and Order of Expedited Removal"—documenting its finding that Lourenco Zan was "inadmissible to the United States." Doc. No. 14-1 at 2. Because Lourenco Zan claimed a fear of returning to Brazil, the remainder of the form—the portion comprising the expedited removal order itself—was left blank. Id.

CBP referred Lourenco Zan to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview, which occurred on July 28, 2022. See Doc. No. 14-3. Though the

USCIS interviewer found Lourenco Zan's statements during the interview credible, including his stated fear of returning to Brazil, the interviewer concluded that the harm Lourenco Zan feared had no nexus to any aspect of his identity that might support an asylum claim.  Doc. No. 14-4 at 5.  This finding was conveyed to Lourenco Zan, who promptly requested a review of USCIS's decision by an immigration judge ("IJ") pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(III).  Doc. No. 14-5 at 2.  A notice referring the matter to an IJ issued on August 2, 2022.  Id. at 2–4.

While these first stages of the expedited removal process unfolded, Lourenco Zan remained in the custody of the Department of Homeland Security ("DHS").  On August 24, 2022, when Lourenco Zan continued to await the scheduling of the hearing he had requested before an IJ, DHS released him on parole, placing him in an Alternatives to Detention program.  See Doc. No. 14-6 (containing notation "Parole ATD" in "Released To" box with no further detail about basis for or conditions of parole).  He has lived in the United States ever since, apparently complying with the conditions governing his release.  Doc. No. 1 ¶¶ 1, 17.  No hearing occurred before an IJ concerning USCIS's credible fear determination—and, it seems, no steps were taken by the respondents to pursue such a hearing or effect Lourenco Zan's "expedited" removal—for more than three years.

On November 17, 2025, Lourenco Zan was taken back into custody by Immigration and Customs Enforcement ("ICE") officers when he appeared as required for a regular check-in appointment.  Id. ¶¶ 2, 18.  His arrest was pursuant to a Form I-200 Warrant for Arrest of Alien that facially cites 8 U.S.C. § 1226 as the authority for arresting and detaining him.  Doc. No. 14-8.  Concurrently with the warrant, ICE issued and served a letter stating Lourenco Zan's parole was terminated "as it has been determined that neither humanitarian reasons nor the public

benefit warrants [his] continued parole" (though the letter provides no further explanation to illuminate the reasons for this "determination").  Doc. No. 14-7.

The day after his arrest, Lourenco Zan instituted this action by filing a habeas petition.  Doc. No. 1.  The respondents answered the petition by highlighting the expedited removal process invoked in 2022 which, they argued, distinguishes this case from others in which this Court has recently construed the relevant immigration detention statutes.  See Doc. No. 11 at 3–10; see also, e.g., Order, Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025), ECF No. 21 (concluding petitioner arrested inside United States was not subject to mandatory detention under 8 U.S.C. § 1225 in case where no expedited removal notice had issued).  As of November 26, 2025, when the opposition memorandum was filed, Lourenco Zan still had not received the hearing before an IJ he had requested in 2022.  See Doc. No. 11-1 ¶ 15 (stating ICE was "working with USCIS" to secure IJ review); Doc. No. 14-9 (referring matter again to IJ on November 21, 2025, in notice that provided no date or time for such hearing).

The opposition memorandum was supported by a declaration prepared on behalf of ICE by Assistant Field Office Director Keith Chan.  Doc. No. 11-1.  The statements in the declaration were based not on Chan's personal knowledge of the underlying events, but on his review of records documenting Lourenzo Zan's immigration history.  Id. ¶¶ 3–4.  Because Lourenco Zan's petition had not addressed the expedited removal order Chan attested had been prepared and served, id. ¶ 9, the Court directed the respondents to file the reports underlying Chan's declaration and documenting Lourenco Zan's recent arrest so that Lourenco Zan and the Court could review them, also inviting a reply brief from Lourenco Zan addressing the respondents' arguments.  Doc. No. 12.

The respondents timely complied with the Court's order.  Doc. No. 14.  Review of the underlying documents leads the Court to conclude that Chan's declaration is generally unreliable and not credible (except insofar as it describes facts that are verifiable in the underlying documents now before the Court).  For one thing, his assertion that CBP had served "a Notice and Order of Expedited Removal, Form I-860" after encountering Lourenco Zan at the border is, at best, an incomplete description of a material fact.  Doc. No. 11-1 ¶ 9.  As noted above, that form was only partially completed.  No expedited removal order issued in 2022, and nothing in the record suggests such an order has entered since then.  Similarly—but even worse—Chan's statement that ICE "encountered" and "detained" Lourenco Zan last month "pursuant to its authority under 8 U.S.C. § 1225(b)" entirely neglects to mention that a warrant citing § 1226 issued at the time of the arrest.[1]

Along with the supplemental evidentiary submission, the respondents filed a short memorandum in which they revised their answer to Lourenco Zan's petition.  Doc. No. 13.  Having "become aware of this Court's decision in Shinwari v. Hyde," Order on Am. Pet. for Writ of Habeas Corpus & Request for Injunctive Relief, No. 25-cv-12021-LTS (Oct. 3, 2025), ECF No. 37 (granting petition and ordering bond hearing), the respondents conceded that, "if the Court follows its reasoning in Shinwari, it would reach the same result here."  Doc. No. 13 at 1.  Thus, the respondents "now submit that the Court may resolve this Petition without further briefing or oral argument."  Id.[2]

---

[1] This is not the first time Chan has authored an inaccurate declaration in connection with a petition by a noncitizen challenging their immigration detention in this Court.  See, e.g., Garcia, No. 25-cv-11513-LTS, ECF No. 21 at 3 n.1 (describing Chan's incorrect statement of law and failure to acknowledge contradictory facts and documents).

[2] The respondents noted that, when they filed their recent memorandum, a motion to reconsider was pending in Shinwari.  Doc. No. 13 at 1.  In a ruling issued shortly before this one, however,

Lourenco Zan filed a short reply in which he notified the Court that he finally received, on December 2, 2025, a hearing at which an IJ reviewed—and vacated—USCIS's negative credible fear finding.  Doc. No. 15; Doc. No. 15-1.  The reply brief also emphasizes the respondents' lengthy delay, urging they cannot "suddenly attempt to 'expedite' the very process [they] allowed to lapse" and "lay dormant for more than three years."  Doc. No. 15 at 2.

Having considered the foregoing circumstances and submissions by the parties, the Court concludes that Lourenco Zan is entitled to habeas relief for two reasons, either of which would suffice to justify such a ruling.  First, the respondents' concession in their recent memorandum that this case is legally analogous to Shinwari is reason enough to grant Lourenco Zan the same relief, for the same reasons.  That concession expressly waives any other arguments respondents might advance to justify Lourenco Zan's detention legally or to factually distinguish his circumstances from Shinwari's.  Because the Court will adhere to its prior reasoning—reasoning it has twice reexamined and reaffirmed in response to motions by the government to reconsider it—the respondents' concession here supports a finding that Lourenco Zan, like Shinwari, is not subject to mandatory detention under 8 U.S.C. § 1225(b).  Cf. Rincon v. Hyde, No. 25-cv-12633-BEM, 2025 WL 3122784, at *1–10 (D. Mass. Nov. 7, 2025) (finding noncitizen living in United States under grant of humanitarian parole had due process rights that entitled him to bond hearing after parole was revoked).  Thus, Lourenco Zan is entitled to habeas relief.

Second, the respondents' original position—that Lourenco Zan is, and has always been, subject to mandatory detention under § 1225(b)(1)—is eviscerated by the record before the Court evidencing how the respondents have treated him in the time since his original credible fear

---

the Court denied that motion, leaving intact its resolution of the relevant legal issue.  See Order, Shinwari, No. 25-cv-12021-LTS (Dec. 4, 2025), ECF No. 43.

interview by USICS.  In defining the removal process that CBP initiated in 2022, Congress enacted clear statutory language under the heading "expedited removal of inadmissible arriving aliens," defining "screening" procedures that are designed to be employed at the border and promptly.  8 U.S.C. § 1225(b)(1)(A); cf. Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." (citation modified)).  If, during that screening, a noncitizen claims a fear of returning to their nation of origin, an asylum interview is conducted "either at a port of entry" or another designated location.  § 1225(b)(1)(B)(i).  Where the result of that interview is a rejection of the noncitizen's claim, the noncitizen "shall" be ordered removed "without further hearing or review" unless they request "prompt review by an immigration judge" of their credible fear claim.  § 1225(b)(1)(B)(iii)(I), (III).  If review by an IJ is requested, Congress maintained its focus on efficient procedures with the following unambiguous requirement: "Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under [review]."  § 1225(b)(1)(B)(iii)(III) (emphasis added).

      Here, the record establishes that the respondents did not comply with the plain language of the statute that governs the procedure they initiated at the border.  Lourenco Zan was screened, found inadmissible, and interviewed about his fear of returning to Brazil as Congress contemplated.  However, the respondents failed to secure for him review by an IJ within seven days of the determination by his initial interviewer rejecting his credible fear claim on August 2, 2022.  No such hearing occurred by August 9, 2022.  Indeed, no such hearing occurred until December 2, 2025—more than seven days after the request for such a hearing was reiterated following Lourenco Zan's recent arrest, and more than three years after the original seven-day

6

period had expired.  This fact alone prevents the respondents from continuing to invoke § 1225(b)(1) to justify Lourenco Zan's detention.  That statute governs removal proceedings Congress intended to be undertaken "expeditiously."  Such proceedings must be conducted as Congress defined them, in conformance with the mandatory language quoted above concerning expedited review by an IJ of a negative credible fear finding.  That language—which could not be clearer and is echoed in an implementing regulation that is equally clear, see 8 C.F.R. § 1003.42(e)—simply does not permit the government to wait for more than three years before scheduling the necessary IJ review, let alone detain the noncitizen for such review long beyond the statutorily required seven-day limit.  Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020) (holding "applicant for admission" detained at or near the border is guaranteed those rights "that Congress has provided by statute").

And if that were not enough reason to reject the respondents' reliance on § 1225(b)(1) here (it is), ICE's issuance of a warrant facially invoking § 1226 at the time of Lourenco Zan's arrest would be.  Preparation of such a warrant makes sense, given the respondents' obvious and undeniable failure to complete the expedited removal process as Congress designed it, within the time periods Congress dictated.  The warrant's use suggests that the immigration officers who encountered Lourenco Zan in November did not rely on the expedited removal statute and treat him as a person remaining (via a legal fiction) at the border; rather, they treated him like a noncitizen found inside the country whose arrest and detention were subject to § 1226(a).  Cf. DeAndrade v. Moniz, No. 25-cv-12455-FDS, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025) (finding that where immigration authorities invoked mechanisms available under § 1226 rather than § 1225, they may not "turn back the clock" even where notice of expedited removal had issued before officials resorted to § 1226).  That approach was consistent both with the relevant

agencies' historical practice in such situations and with the plain language of the governing detention statutes.

Accordingly, the Court hereby ALLOWS the petition and ORDERS as follows: 1) the respondents shall release Lourenco Zan unless he is provided a bond hearing under 8 U.S.C. § 1226(a) **by December 10, 2025**;[3] 2) the respondents shall not retaliate against the petitioner in the context of the bond hearing or otherwise for filing this habeas petition; and 3) the respondents shall file a status report no later than December 12, 2025, describing their compliance with this Order.

SO ORDERED.

                                                      /s/ Leo T. Sorokin
                                                     United States District Judge

---

[3] At the hearing, the government will have the burden of either proving by clear and convincing evidence that the petitioner poses a danger to the community, or proving by a preponderance of the evidence that he is a flight risk. Hernandez-Lara v. Lyons, 10 F.4th 19, 42 (1st Cir. 2021).